E. T. WRIGHT & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10966.   Promulgated May 20, 1931.

*Donald Horne, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

OPINION.

TRAMMELL: The taxpayer takes the position that the consideration paid for the assets, both tangible and intangible, was $150,000 par value of stock and the assumption of partnership liabilities in the amount of $296,705.18; that the assumption of liabilities is equivalent to the payment of cash and that this cash equivalent should be allocated to the tangible and intangible assets as the stock consideration should be. The Commissioner takes the position that the liabilities should first be applied against the tangible assets.

We think that there is no merit in the taxpayer's contention. What the petitioner paid for with its stock was only the net value of the assets. The net value of tangible assets was $150,000 and the value of good will was $125,000. Those were the values paid in for stock. For invested capital purposes, the assumption and payment of liabilities is to be considered in the determination of invested capital, if at all, in the form of accumulated earnings or profits undistributed to stockholders and not lost in operations and should not be again included when paid out even in the acquisition of assets.

The capital stock issued for assets, tangible and intangible above set out, should be allocated to the respective classes of assets, in accordance with the values of each. The excess of the value of the net tangible assets over the amount of the capital stock allocated to them constitutes paid-in surplus and the corporation is entitled to include in invested capital the intangible assets paid in for stock in accordance with the above-stated allocation not in excess of the par value of the capital stock allocated to them, subject to 25% limitation in accordance with our decision in *St. Louis Screw Co.*, 2 B. T. A. 649.

With respect to the issue involving the calculation of the income tax on the fiscal year basis, we see no occasion for disturbing the action of the Commissioner. The petitioner refers to the fact that the respondent calculated the excess-profits tax at 1918 rates and took one-twelfth of that figure, then calculated the excess-profits tax at 1919 rates and took eleven-twelfths of that figure and added the two amounts to determine the excess-profits tax for the fiscal year 1919. This is in strict accordance with section 335 (b) of the Revenue Act of 1918.

The petitioner says that the Commissioner did not follow the same course in calculating the income tax in that he took the net

income for the fiscal year, deducted the composite or total excess-profits tax as above stated, and then taxed one-twelfth of the balance at the 1918 rates and eleven-twelfths at 1919 rates. The petitioner contends that he should have followed the same method of calculation with respect to the income tax that he did with respect to excess-profits tax. However, section 236 (b) of the Revenue Act of 1918, relating to credits, allowed, provides as follows:

.(b) The amount of any taxes imposed by Title III for the same taxable year: *Provided*, That in the case of a corporation which makes return for a fiscal year beginning in 1917 and ending in 1918, in computing the tax as provided in subdivision (a) of section 205, the tax computed for the entire period under Title II of the Revenue Act of 1917 shall be credited against the net income computed for the entire period under .Title I of the Revenue Act of 1916 as amended by the Revenue Act of 1917 and under Title I of the Revenue Act of 1917, and the tax computed for the entire period under Title III of this Act at the rates prescribed for the calendar year 1918 shall be credited against the net income computed for the entire period under this Title; * * *

The general rule as laid down by the above section is that the amount of any taxes imposed by Title III, that is, the title relating to excess-profits taxes for the same taxable year, shall be allowed as a credit. There is a proviso with respect to the fiscal year 1917, that is, a fiscal year which begins in 1916 and ends in 1917, which proviso also relates to the fiscal year 1918 beginning in 1917, but there is no proviso or exception relating to how the credits should be determined for a fiscal year which begins in 1918 and ends in 1919, and in the absence of any proviso or exception relating to the method of calculating the credits on account of excess-profits taxes for the fiscal year involved in this proceeding, different from that set out in the general rule in the first part of section 236 (b), we think that the Commissioner correctly calculated the amount of the credits by using the amount of profits taxes determined by him, which amount is conceded to be correct, and by applying the entire amount of the profits taxes against the entire amount of income taxes calculated for the same period. This is the general rule set out in section 236 (b). The exception following the word "provided" relates specifically to the fiscal years 1917 and 1918. We see no occasion for applying the rule specifically prescribed for the fiscal years 1917 and 1918 to the fiscal year 1919 in the absence of some statutory authority therefor. The fact that the statute made specific reference in the proviso to specific fiscal years imports an intention that it did not relate to other fiscal years.

We therefore approve the action of the respondent in connection with the calculation of the excess-profits-tax credit.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*